**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **RANDALL C. THOMPSON** | : | **DOCKET NO. 2:17-cv-0873** |
| **D.O.C. # 590603** | | **SECTION P** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **DARREL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

<u>**REPORT AND RECOMMENDATION**</u>

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Randall C. Thompson, who is proceeding pro se in this matter. Thompson is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Darrel Vannoy, warden of that facility and respondent in this matter, opposes the petition.

This petition is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the petition for writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

# I.
## BACKGROUND

### A. Conviction

Thompson was charged by bill of information in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, with one count of aggravated incest, a violation of Louisiana Revised Statute § 14:78.1.[1] Doc. 17, att. 3, p. 52. At the conclusion of a jury trial on September 13, 2011, he was convicted as charged with 11 of 12 jurors concurring in the verdict. *Id.* at 46. He was sentenced to a 35 year term of imprisonment, without benefit of probation, parole, or suspension of sentence. Doc. 17, att. 12, p. 204.

### B. Direct Appeal

Thompson filed an appeal in the Louisiana Third Circuit Court of Appeal, alleging the following assignments of error:

1. The trial court erred when it instructed the jury that jurisdiction was not an issue for consideration, despite two requests from the jury asking to consider the issue.

2. The trial court erred when it failed to grant the defense's request for a mistrial after the State presented "other crimes" evidence in violation of the court's order.

3. The trial court erred in depriving the defendant of a unanimous jury.

4. The case proceeded to trial in violation of the speedy trial act.

*State v. Thompson*, 111 So.3d 580, 581 (5th Cir. 2013). Finding no merit to the above claims and noting that the defense had waived the jurisdictional argument by failing to file a motion to quash, the Third Circuit affirmed Thompson's conviction. *Id.* at 581–87. Thompson sought review in the Louisiana Supreme Court, which denied same. *State v. Thompson*, 125 So.3d 1102 (2013). He then

---

[1] In 2014 aggravated incest was re-designated as an aggravated crime against nature under Louisiana Revised Statute § 14:89.1. *See, e.g.*, *State v. Benoit*, 237 So.3d 1214, 1216 n. 3 (La. Ct. App. 5th Cir. 2017).

filed a petition for writ of certiorari in the United States Supreme Court, which was denied on April 28, 2014. *Thompson v. Louisiana*, 134 S.Ct. 1942 (2014).

### C.  State Collateral Review

Thompson filed a pro se application for post-conviction relief, claiming ineffective assistance of trial counsel, in the state district court on or about January 21, 2015.[2] Doc. 17, att. 13, pp. 57–80. He also requested appointment of counsel and an evidentiary hearing. *Id.* at 54–56. After receiving a response from the state, the court denied the application without a hearing. *Id.* at 100. The petitioner sought a writ of review in the Third Circuit, which denied same with the following:

> **WRIT DENIED:** Relator was not prejudiced by counsel's failure to file a motion to quash the indictment or a motion to continue the trial. Relator had sufficient time to investigate and interview witnesses based on discovery responses filed on March 21, 2011. Accordingly, Relator's writ application seeking review of the trial court's June 15, 2015 order is denied. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

*Id.* at 107. The petitioner then sought review in the Louisiana Supreme Court, which denied same on April 7, 2017, while also noting cursorily that "Relator fails to show he received ineffective assistance of counsel under the standard of *Strickland* . . . ." *Id.* at 110–11; *State ex rel. Thompson v. State*, 215 So.3d 663 (La. 2017).

### D.  Federal Habeas Petition

The instant petition was filed in this court on July 5, 2017. Doc. 1, p. 15. Thompson raises the following claims for relief:

> 1. The state courts circumvented federal law by failing to rule on the petitioner's motion to appoint counsel in his application for post-conviction relief.

---

[2] For pro se filings by an inmate, this court uses the date that the pleading was surrendered for mailing, if available, as the date of filing. If that date is not provided, we look to the date that the pleading was received by the court.

    2. Thompson received ineffective assistance based on:

        a. Trial counsel's failure to file a motion to quash challenging jurisdiction.
        b. Trial counsel's failure to seek a continuance.
        c. Trial counsel's failure to properly investigate and interview witnesses.
        d. The cumulative effect of trial counsel's errors.

    3. The allowance of a conviction by non-unanimous jury under Louisiana law is unconstitutional.

    4. The state court lacked jurisdiction over Thompson's case.

    5. The state court erred in not granting a mistrial after prosecutors elicited other crimes evidence.

Doc. 1, att. 2. The respondent has filed an answer and memorandum in opposition [doc. 17; doc. 17, att. 1] and Thompson has filed a reply. Doc. 19. Accordingly, the matter is now ripe for review.

## II.
### STANDARDS ON HABEAS REVIEW

#### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and

the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Exhaustion and Procedural Default

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir.

1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### 2. *Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based

on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *E.g.*, *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That statute provides that a writ of habeas corpus shall not be granted unless the state court's adjudication resulted in a decision that was (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d). Where a habeas court is faced with an unexplained decision on the merits, it "looks through" that decision to the last related state court decision that provides a relevant rationale and presumes that the unexplained decision adopts the same reasoning. The respondent may rebut the presumption by showing that the unexplained decision most likely relied on different grounds than the reasoned decision below. *Wilson v. Sellers*, 138 S.Ct. 1188 (2018). Our review, however, ultimately encompasses "only a state court's decision, and not the written opinion explaining that decision." *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (internal quotations omitted); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.") Even if the state court issues a summary denial of the claim, "the habeas petitioner's burden still must be met be showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. The petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87. A decision is only contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [contrary result]." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted). As the Court recently emphasized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' . . . Nor, of course, do state-court decisions, treatises, or law review articles." *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (internal citation omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies only to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination. Instead, he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Instead, a presumption of correctness attaches to the state court's factual determinations and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.
### LEGAL ANALYSIS

**A. Timeliness**

Thompson's conviction became final on April 28, 2014, when the United States Supreme Court denied his petition for writ of certiorari. From that time until he filed his application for post-conviction relief in the state district court, **268 days** accrued against § 2244(d)'s one-year limit. That limitation period remained statutorily tolled from January 21, 2015, until April 7, 2017, while Thompson's application for post-conviction relief was pending in the state courts. An additional **89 days** then accrued before Thompson filed his federal habeas petition on July 5, 2017. Accordingly, **357 days** are counted against § 2244(d)'s one year limit, from the date Thompson's conviction became final, and this matter is timely.

**B. Exhaustion and Procedural Default**

Thompson admits that Claim 4 is subject to a procedural default, as it "was properly dismissed due to defense counsel's failure to follow state procedural guidelines regarding jurisdictional issues." Doc. 1, att. 2, pp. 36–37. He raises no basis for excusing the default, but instead accepts that he must argue the claim as one of ineffective assistance of counsel. *See id.*; doc. 19, p. 27.

As noted above, the Third Circuit stated that the assignment of error lacked merit. That determination, however, was grounded in its finding that the trial court had correctly determined that no instruction on venue or jurisdiction was required because, under Article 615 of the Louisiana Code of Criminal Procedure, the issue could not be addressed unless the defense raised it in a motion to quash. *Thompson*, 111 So.3d at 582–83. Thus, despite the state court's nod to the merits, its ruling was clearly grounded in an independent state procedural rule and habeas review of Claim 4 is foreclosed.

The respondent contends that Claim 5 – relating to the trial court's denial of a mistrial based on admission of other crimes evidence – is unexhausted, because the petitioner failed to give the state courts adequate notice of the federal nature of his claim. *See* doc. 17, att. 1, pp. 28–30. As the respondent notes, habeas claims based on denial of a mistrial are not cognizable to the extent that they ask us "to reexamine state-court determinations on state-law questions." *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999). "[E]rrors of state law, such as denial of a mistrial, must rise to a constitutional dimension in order to merit habeas relief." *Thomas v. Ieyoub*, 26 F.3d 1119, 1994 WL 286198, at *2 (5th Cir. 1994) (unpublished) (citing *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992)). Accordingly, denial of a motion for mistrial will justify habeas relief "only if it was 'error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.'" *Hernandez v. Dretke*, 125 Fed. App'x 528, 529 (5th Cir. 2005) (quoting *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)).

As described above, a claim is not exhausted unless the petitioner "fairly present[s]" his claim to the appropriate state courts in a manner that alerts those courts to the federal nature of his claim. *Wilder*, 274 F.3d at 259. When a petitioner's briefing of a claim makes no reference to federal law, that claim is not fairly presented. *Baldwin v. Reese*, 124 S.Ct. 1347, 1349–51 (2004); *see also Gray v. Netherland*, 116 S.Ct. 2074, 2081 (1996) (holding that, for exhaustion purposes, a claim for federal relief must include reference to a specific constitutional guarantee).

Thompson contends that the federal nature of his claim was apparent through his citations to three federal cases – *Old Chief v. United States*, 117 S.Ct. 644 (1997); *United States v. Gemma*, 818 F.3d 23 (1st Cir. 2016); and *United States v. Henry*, 848 F.3d 1 (1st Cir. 2017). Doc. 19, p. 27. We note, however, that the two First Circuit cases were only decided after completion of Thompson's direct appeal, and that the mistrial claim was not presented in his application for post-

-10-

conviction relief. Additionally, Thompson's brief and reply to the Third Circuit on direct appeal cited only state law grounds in support of his mistrial claim and lacked even a vague reference to due process or any other constitutional right. Doc. 17, att. 2, pp. 9–12, 60. Likewise, his application for supervisory writs to the Louisiana Supreme Court made no mention of federal law or any constitutional right in relation to this claim. *Id.* at 66–67, 72–75. Accordingly, Thompson did not exhaust his claim before either of these courts.

Thompson is now time-barred from raising the mistrial claim in a second application for post-conviction relief, because more than two years have passed since his conviction became final. La. C. Cr. P. art. 930.8. He also fails to show that he would be permitted to file a successive application under the limits set out under Article 930.4 of the Louisiana Code of Criminal Procedure. The claim is thus subject to technical procedural default. Thompson raises no basis for excusing a procedural default as to this claim. Accordingly, the procedural default applies and we will not review the merits of Claim 5.

### C. *Merits Consideration*

#### 1. *Failure to appoint counsel on post-conviction relief*

Thompson first complains that the state district court erred in denying his application for post-conviction relief without ruling on his motion to appoint counsel.

As the respondent notes, ineffective assistance of counsel in post-conviction proceedings can serve as cause to excuse a procedurally defaulted habeas claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 132 S.Ct. 1309 (2012); *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). However, there remains no constitutional right to counsel in state post-conviction proceedings. *Davila v. Davis*, 137 S.Ct. 2058, 2062 (2017). Accordingly, the petitioner's claim is grounded solely in the state district court's refusal to appoint counsel under the provisions authorizing such

an appointment under state law, and is not cognizable on habeas review.[3] The petitioner therefore shows no right to relief on this claim.

### 2. *Ineffective assistance of counsel*

Thompson next complains that his counsel was ineffective based on numerous alleged instances of deficient performance. The Louisiana Supreme Court addressed this claim on the merits, by way of its citation to *Strickland*, and made no mention of either the Third Circuit or state district court's lengthier findings. *Thompson*, 215 So.3d at 663. Accordingly, there is no cause for assuming that the state supreme court adopted the lower courts' findings and we instead look to the Louisiana Supreme Court's opinion as the decision under § 2254(d) review.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at

---

[3] As the respondent asserts, even if the petitioner could show that the state district court's lack of ruling on his request amounted to a due process violation (*see Hernandez*, supra, 125 Fed. App'x at 529) he would still fail to state a cognizable habeas claim. Habeas relief is only available when the court finds "constitutional error at the trial or direct review level." *Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir. 1999). "[P]ost-conviction error does not make a state prisoner's incarceration repugnant to the Constitution or laws or treaties of the United States." *Budwine v. Terrell*, 2012 WL 5866551, at *3 (W.D. La. Oct. 15, 2012), report and recommendation adopted, 2012 WL 5866525 (W.D. La. Nov. 19, 2012).

1065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

In this matter, Thompson alleges the following instances of deficient performance: (1) failure to file a motion to quash the indictment; (2) failure to seek a continuance; and (3) failure to properly investigate/interview witnesses. He also alleges that he is entitled to relief based on the cumulative effect of counsel's errors.

### a.  *Failure to file a motion to quash the indictment*

Thompson first alleges that trial counsel erred by not filing a motion to quash the indictment, in order to raise and preserve his challenge to the state district court's jurisdiction. Venue, as determined under state law, confers jurisdiction for Louisiana criminal courts. *State v. Williams*, 817 So.2d 470, 472 (La. Ct. App. 3d Cir. 2002). The Louisiana Code of Criminal Procedure provides that a challenge to venue must be raised before trial, through a pretrial motion to quash. La. C. Cr. P. art. 615. As Thompson concedes, the Third Circuit correctly denied his challenge to the judge's failure to instruct/respond to queries on venue because the defense failed

to file a motion to quash. His ineffective assistance allegation thus encompasses (1) trial counsel's deficient performance through his failure to recognize and properly raise a challenge to venue and (2) the prejudice that resulted when no motion to quash was filed.

The Louisiana Constitution, Article 1, Section 16, states that criminal defendants are entitled to trial "in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law." Limitations on venue are further defined in the Louisiana Code of Criminal Procedure:

> All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.

La. C. Cr. P. ar. 611. In a criminal case the burden is on the state to establish venue. La. C. Cr. P. art. 615. Venue is not an element of the crime and the state's burden on a motion to quash challenging venue is reduced to a preponderance of the evidence. *Id.*; *State v. Johnson*, 2 So.3d 606, 614 (La. Ct. App. 2d Cir. 2009).

Thompson alleges that "the issue of jurisdiction was paramount" in his case, as he maintains that the weight of evidence showed that the sexual abuse took place in Texas rather than Louisiana. Doc. 1, att. 2, pp. 15–16. The respondent maintains that the suggestions about Texas came from the defense, and that there was sufficient evidence from the victim's testimony to establish that the offense occurred in Calcasieu Parish, Louisiana.

At trial Thompson maintained that the allegations against him were the result of the victim's confusion when he applied ointment to a rash on the victim's bottom. Thompson's wife testified that she had observed a rash on the victim's bottom while they were staying in Texas, and that she had let Thompson know about it and then observed him applying the ointment. Doc. 17,

att. 10, pp. 197–204, 217–18. Thompson denied all allegations of abuse and likewise testified that he had touched that area of the victim's body on one occasion when he applied the ointment, while they were in Texas. Doc. 17, att. 11, pp. 13–14, 20, 32–36. The victim, however, testified that the abuse began when (s)he[4] was visiting the petitioner in Vinton, Louisiana, and that it occurred in multiple times at that same location. Doc. 17, att. 9, pp. 176–81. (S)he denied ever having a rash in the areas where Thompson touched him/her and also denied that Thompson had ever applied any ointment to that area. *Id.* On cross-examination, Thompson's attorney attempted to show that the victim's memory and understanding of state boundaries called into question his/her recollection that the abuse occurred in Louisiana. *Id.* at 194–221. Thompson's attorney also cited the victim's statements in a prior interview, three and a half years before the trial, in which (s)he allegedly maintained that the abuse occurred in Texas but also stated that it occurred in Vinton. *Id.* at 207–12. However, the victim maintained on redirect that instances of abuse had occurred in Louisiana. *See id.* at 221–23.

The jury retired to deliberate at 11:35 am on September 13, 2011. Doc. 17, att. 3, p. 43. During deliberations the jury submitted several inquiries and requests to the court. *Id.* at 43–46. Among these was a note received at 2:45 pm, asking "Is location an issue?" *Id.* at 44–45. The court responded, over the defense's objections, "Location is not an issue for the Jury." *Id.* at 45. At 3:06 pm the court received another inquiry, which simply stated, "Texas/Louisiana?" *Id.* The court responded, with the defense again objecting, "As stated, location is not an issue for the Jury." *Id.* At 3:44 pm, the court received notice that the jury had reached a verdict. *Id.* at 45–46.

---

[4] Given the familial relationship that can be assumed based on the conviction, and the identification of the petitioner's name in the state court cases to which we must cite, this court has gone to extra lengths to conceal the victim's identity by omitting both his/her gender and initials.

The attempt to confine the allegations to Texas appears to arise from the defense's explanation of the abuse, which the jury rejected in convicting Thompson.[5] Meanwhile, the victim was adamant that the abuse had occurred multiple times, in Vinton. The fact that one or more jurors had a question as to the relevance of venue does not show that the petitioner would have been able to prevail if a venue challenge had been litigated before trial. Furthermore, the fact that the jury went on to convict Thompson shows that the victim's account was persuasive and that the jury rejected the defense's attempt to characterize the abuse as a misunderstanding over an isolated incident in Texas. Thompson fails to cast adequate doubt on the prosecution's ability to carry its burden on a motion to quash. He cannot show any prejudice under *Strickland* from counsel's allegedly deficient performance in failing to file such a motion. Accordingly, he fails to show sufficient error to the state court's ruling and is not entitled to habeas relief on this claim.

### b. Failure to seek a continuance

Thompson next alleges that trial counsel performed deficiently by failing to seek a continuance based on the amendment to the indictment which, as stated above at note 5, broadened the date of the offense from a specific date in February 2008 to a nearly two-year range leading up to that date. Doc. 17, att. 3, p. 52. The indictment was amended on August 31, 2011. *Id.* Although the defense objected to the amendment, trial counsel maintained the defendant's motion for speedy trial and expressed the defense's wish to proceed with the trial. *Id.* at 25. Jury selection began as scheduled on September 6, 2011. *Id.* at 26.

---

[5] Thompson points out that the indictment was amended shortly before trial began to change the offense date from a specific date in February 2008 (when he alleges he was in Texas) to a nearly two-year period leading up to that date. *See* doc. 17, att. 3, p. 52. However, the above testimony about ointment application fixed that event in December 2007. Doc. 17, att. 10, pp. 194–204; doc. 17, att. 11, pp. 20, 32–36. As noted above, the victim testified that the abuse occurred on multiple occasions. Accordingly, Thompson's ability to show that he was in Texas on the specific date alleged in the original indictment does not show any merit to his venue challenge.

Thompson asserts that he had an alibi prepared for the date alleged in the original indictment and that trial counsel performed deficiently by not seeking a continuance to better prepare when the amendment destroyed that line of defense. Specifically, he asserts that trial counsel could have subpoenaed his work records, credit card records, travel trailer park receipts, and other available records, re-interviewed his sister about the dates that Thompson's travel trailer was parked at her house in Vinton, and interviewed other family members and friends regarding the dates alleged in the new indictment. Doc. 1, att. 2, p. 19.

The respondent maintains that the decision to proceed was a matter of trial strategy, entitled to deference under *Strickland*, and that the petitioner has failed to show any prejudice from this decision. As to the second point we agree, and therefore we decline to consider the first point. The victim did not mention specific dates in his/her testimony but instead described the abuse as occurring multiple times over that period. *See* doc. 17, att. 9, pp. 176–229. Thompson cannot establish that any further investigation of an alibi defense would have yielded information helpful to his case. As for the other ways trial counsel might have prepared with more time, these are addressed in the claim below. Therefore Thompson has not shown sufficient error to the trial court's ruling, and he is not entitled to habeas relief on this claim.

### c.  *Failure to investigate and interview witnesses*

Finally, Thompson alleges that trial counsel failed to adequately investigate the case by (1) interviewing and calling as a witness a physician who examined the victim, (2) preparing to cross-examine the victim regarding a complaint against him in Texas, (3) interviewing and calling a witness who would have testified that the victim's mother was vindictive, and (4) adequately preparing to cross-examine the child advocacy center interviewer.

As the respondent notes, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Complaints regarding uncalled witnesses are disfavored in federal habeas review, due to both the deference given to counsel's strategic choices on presentation of testimonial evidence and the largely speculative nature of allegations about what an uncalled witness would have stated. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* (citing *Bray v. Quaterman*, 265 Fed. App'x 296, 298 (5th Cir. 2008)).

Thompson first asserts that defense counsel should have interviewed and called Dr. Darby, who was allegedly the victim's physician during the time when the abuse occurred. He maintains that Darby examined the victim at some point and found no evidence of sexual abuse. Doc. 1, att. 2, p. 20. When the time frame of the allegations was expanded, he maintains, defense counsel should have interviewed Darby to ascertain whether he examined the victim at any other time during that period and found any evidence of sexual abuse.[6] *Id.* However, Thompson provides nothing to show Darby's availability to testify or the substance of his testimony, beyond Thompson's own speculation. Accordingly, Thompson cannot demonstrate prejudice based on counsel's approach to this potential witness.

---

[6] Thompson maintains that counsel should have interviewed Darby in order to better prepare for cross-examining him and other state's witnesses. Doc. 19, p. 10. However, Darby did not testify at Thompson's trial and Thompson does not explain how interviewing Darby would have improved cross-examination of any other witness. Thompson also alleges that interviewing Darby would have given counsel notice of the possibility that the state would amend the indictment, but provides no basis for this assertion. *Id.*

Thompson alleges that trial counsel failed to adequately prepare to cross-examine the victim. Doc. 1, att. 2, pp. 20–21. To this end, however, he only suggests that trial counsel should have called for a recess "to discuss the expanded dates with his client or defense witnesses." *Id.* As noted above, the victim did not testify as to any specific dates and so Thompson fails to show how he could have prepared an alibi defense. He also demonstrates no deficiency in trial counsel's choice to focus cross-examination on prior inconsistent statements and the hazy nature of the victim's memory from that time. *See* doc. 17, att. 9, pp. 194–221.

Thompson next alleges that trial counsel should have called J.W., an acquaintance of the victim's mother, and that this witness would have testified that the victim's mother had a vindictive character and a motive for helping the victim fabricate allegations against him. Doc. 1, att. 2, pp. 21–22. He also maintains that "there is a distinct possibility" that J.W. could have impeached the victim's mother's testimony on her alleged relationship with a convicted sex offender, and maintains that he could have shown J.W.'s potential testimony if granted an evidentiary hearing. *Id.* at 21; doc. 19, pp. 10–11. However, Thompson has provided nothing from J.W. in support of his self-serving assertions. Accordingly, as outlined below, he fails to show a right to an evidentiary hearing in this court. He also fails to show any prejudice from counsel's alleged deficiencies in not interviewing or calling J.W.

Finally, Thompson alleges that trial counsel failed to adequately prepare for cross-examination of child advocacy center interviewer Emily Williams. Doc. 1, att. 2, p. 22. He complains about counsel's failure to focus on the fact that the recording of Williams's initial interview with the victim was damaged before trial and that Williams, rather than the victim, raised the issue of where the abuse had occurred. *Id.*; doc. 19, pp. 11–12. However, Williams identified the DVD containing a recording of her only interview with the victim and that recording was

published to the jury. Doc. 17, att. 9, pp. 241–50. Trial counsel cross-examined Williams about the instructions she gave during the interview and her lack of memory about whether the detectives observing the interview fed her any questions. Doc. 17, att. 10, pp. 15–17. Williams was recalled to testify about her interview of another minor child involved in the case, and once again only referenced one interview and one recording. *Id.* at 31–38. Thompson's insinuations that foul play was involved with the recordings are insufficient to undermine the deference due to trial counsel's chosen line of inquiry under *Strickland*. Accordingly, he fails to show deficient performance under this claim. He has not shown sufficient error to the state court's ruling on any part of this claim, and is not entitled to habeas relief.

### d.   Cumulative error

Finally, Thompson alleges that he is entitled to relief based on the cumulative effect of trial counsel's errors. The cumulative error doctrine allows for reversal "when an aggregation of non-reversible errors, *i.e.*, plain and harmless errors that do not individually warrant reversal, cumulatively deny a defendant's constitutional right to a fair trial." *United States v. Cervantes*, 706 F.3d 603, 619 (5th Cir. 2013). Relief is only available under this doctrine "when the constitutional errors committed in the state court so fatally infected the trial that they violated the trial's fundamental fairness" and, more likely than not, "caused a suspect verdict." *Zimmerman v. Cockrell*, 69 Fed. App'x 658, 2003 WL 21356018, at *3 (5th Cir. 2003) (internal quotations omitted). Here, under every instance above where we have even assumed *arguendo* that counsel might have performed deficiently, Thompson has not shown that any prejudice resulted. Accordingly, he fails to show sufficient error to the state court's ruling and is not entitled to habeas relief under this claim.

### 3.  *Non-unanimous jury verdict*

Lastly, Thompson alleges that his rights were violated through his conviction by a non-unanimous jury, as permitted under Louisiana Code of Criminal Procedure article 782.[7] The Third Circuit denied the claim on the merits, finding that there was no constitutional right to a unanimous jury verdict. *Thompson*, 111 So.3d at 586. The Louisiana Supreme Court denied writs without comment. *Thompson*, 125 So.3d at 1102. Accordingly, the Third Circuit's decision is the one under § 2254(d) review in this matter.

As this court recently noted, Article 782 has withstood constitutional challenges and the Supreme Court has repeatedly denied certiorari on the issue since it was first affirmed in *Apodaca v. Oregon*, 92 S.Ct. 1628 (1972), and *Johnson v. Louisiana*, 92 S.Ct. 1620 (1972). *Ingram v. Goodwin*, 981 F.Supp.2d 552, 569–70 (W.D. La. 2013). Accordingly, despite the fact that Louisiana and Oregon alone among the states allow for non-unanimous verdicts in criminal cases, Thompson cannot show that the Third Circuit's decision that the claim lacked merit was contrary to or involved an unreasonable application of clearly established federal law.

### 4.  *Request for evidentiary hearing*

Finally, Thompson requests an evidentiary hearing in this matter. *E.g.*, doc. 1, att. 2, p. 41. An evidentiary hearing is not warranted when the petitioner's claims can be resolved on the existing record, or where the facts alleged by the petitioner, even if true, would not entitle him to habeas relief. *Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007); *see, e.g.*, *West v. Johnson*, 92 F.3d 1385, 1410 (5th Cir. 1996). A petitioner is also not entitled to an evidentiary hearing based on conclusory allegations or on self-serving declarations contradicted by credible record evidence. *United States v. Zuno-Arce*, 209 F.3d 1095, 1103 (9th Cir. 2000) (overruled on other grounds by

---

[7] Article 782 provides that, when punishment is necessarily confined to hard labor, the case "shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." La. C. Cr. P. art. 782.

*Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002)); *United States v. Barrow*, 448 F.3d 37, 41–42 (1st Cir. 2006); *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991); *see, e.g.*, *United States v. Gallant*, 562 Fed. App'x 712, 715–16 (10th Cir. 2014) (affirming denial of evidentiary hearing on uncalled witness claim in § 2255 proceeding, where movant failed to provide any support for his allegations of witnesses' availability or testimony). Thompson's unsupported allegations about the availability and likely testimony of uncalled witnesses are insufficient to show a possibility of evidentiary support for his claims. His remaining allegations and insinuations, even if true, do not show a right to relief on any claim. Accordingly, he is not entitled to an evidentiary hearing in this matter.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 7th day of June, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE